DEREK SMITH LAW GROUP, PLLC
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com
Attorneys for Plaintiff, Felicia Harrison

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FELICIA HARRISON,<br>Plaintiff,<br>v.<br>PHILADELPHIA HOUSING AUTHORITY,<br>KYLE MULGREW-LAMBE and<br>GEORGE BROWN, JR.,<br>Defendants. | Civil Action No. ___________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

## NATURE OF THE ACTION

1. Plaintiff, Felicia Harrison, brings this action for relief from violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code §§ 9-1101 et seq. ("PFPO").

2. Ms. Harrison is a Command Center Dispatcher for the Philadelphia Housing Authority. Beginning in March 2024, a male coworker, Defendant George Brown, Jr., made sexual comments to her, sent her sexual text messages, and spread rumors about her. When she rejected him, he retaliated. When she reported him, PHA took ninety days to call her complaint "unsubstantiated," took no action against him, and left her to absorb the consequences. For the next year Mr. Brown sabotaged her workstation, occupied her desk at the start of her shift, and

crowded her as she stepped off the elevator and entered the radio room, while her supervisor, Defendant Kyle Mulgrew-Lambe, answered her written reports with group emails.

3. Ms. Harrison seeks declaratory and equitable relief, compensatory damages, back pay, attorneys' fees, and costs.

## THE PARTIES

4. Plaintiff, Felicia Harrison, is an adult individual and a resident of Philadelphia, Pennsylvania.

5. Defendant, Philadelphia Housing Authority ("PHA"), is a public housing authority with its principal place of business at 2013 Ridge Avenue, Philadelphia, Pennsylvania 19121.

6. At all relevant times, PHA employed Ms. Harrison and was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), the PHRA, 43 P.S. § 954(b), and the PFPO, Phila. Code § 9-1102.

7. At all relevant times, PHA employed fifteen or more employees.

8. Defendant, Kyle Mulgrew-Lambe, is an adult individual who at all relevant times was employed by PHA as Director of Compliance and Security Operations in PHA's Office of Public Safety, located at 2013 Ridge Avenue, Philadelphia, Pennsylvania 19121.

9. At all relevant times, Defendant Mulgrew-Lambe was Ms. Harrison's direct supervisor, and the Command Center Dispatchers, including Ms. Harrison and Defendant Brown, reported directly to him.

10. Defendant, George Brown, Jr., is an adult individual who at relevant times was employed by PHA as a Command Center Dispatcher and was Ms. Harrison's coworker.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER TITLE VII

11. On or about June 13, 2025, Ms. Harrison filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2025-07277, alleging sex discrimination, sexual harassment, hostile work environment, and retaliation under Title VII, the PHRA, and the PFPO.

12. Ms. Harrison elected to dual-file her Charge with the Pennsylvania Human Relations Commission ("PHRC") and requested that it also be dual-filed with the Philadelphia Commission on Human Relations ("PCHR").

13. The Charge described the conduct of Defendants Brown and Mulgrew-Lambe and stated that the conduct alleged met the threshold for individual liability under the PHRA and the PFPO.

14. More than one year has passed since the Charge was dual-filed with the PHRC.

15. On July 20, 2026, the EEOC issued Ms. Harrison a Notice of Right to Sue, which she received the same day.

16. Ms. Harrison has filed this action within ninety days of her receipt of the Notice of Right to Sue.

17. Ms. Harrison has satisfied all administrative prerequisites to bringing this action.

## JURISDICTION AND VENUE

18. This Court has original jurisdiction over Ms. Harrison's Title VII claims under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

19. This Court has supplemental jurisdiction over Ms. Harrison's PHRA and PFPO claims under 28 U.S.C. § 1367(a), because those claims arise from the same facts as her federal claims and form part of the same case or controversy.

20. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because PHA resides in this District, the unlawful employment practices occurred in this District, and Ms. Harrison's employment records are maintained here.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. PHA hired Ms. Harrison as a Command Center Dispatcher.

21. PHA hired Ms. Harrison as a Command Center Dispatcher on or about December 1, 2023.

22. PHA's Command Center, also called the radio room, is the communications hub of PHA's Office of Public Safety. Dispatchers receive emergency and non-emergency calls and dispatch PHA police officers.

23. PHA requires that at least two Dispatchers be on duty on every shift.

24. After completing her training, Ms. Harrison was assigned to the 4:00 p.m. to 12:00 a.m. shift, with Sundays and Mondays as her regular days off.

25. PHA has rated Ms. Harrison a satisfactory performer.

### B. Defendant Brown sexually harassed Ms. Harrison and turned on her when she rejected him.

26. Beginning in or around March 2024, Defendant Brown, a fellow Dispatcher on Ms. Harrison's shift, began making sexual comments to her at work.

27. Defendant Brown told Ms. Harrison, "Pop Pop can get it up."

28. Defendant Brown told Ms. Harrison that he wanted her to be his girlfriend, and joked that he wanted the other Dispatchers to think that he and Ms. Harrison were "together."

29. Defendant Brown made sexual comments to Ms. Harrison once or twice a week.

30. Defendant Brown sent Ms. Harrison unwanted, sexually explicit text messages.

31. Defendant Brown spread false and degrading rumors about Ms. Harrison to their coworkers.

32. Ms. Harrison did not welcome any of this conduct, and she rejected Defendant Brown's advances.

33. In April 2024, after Ms. Harrison rejected him, Defendant Brown retaliated. He refused to perform shared tasks during their shifts, left her to handle the Command Center's call volume alone when they were the only two Dispatchers on duty, and became openly hostile toward her.

34. During the same period, two female coworkers on the shift, Fatima Hashim and Marchelle Johnson, said that Ms. Harrison "wasn't the good girl she appeared to be," referred to any man Ms. Harrison spoke with as her "boo," excluded her, and sprayed Lysol on her chair.

**C. Ms. Harrison reported the harassment, and PHA's own managers called the environment a serious violation.**

35. On April 30, 2024, Ms. Harrison wrote to Defendant Mulgrew-Lambe that she was being subjected to "inappropriate comments or jokes in the workplace" and that the conduct was making her uncomfortable.

36. On May 1, 2024, Robert Clark, PHA's Vice President of Public Safety, wrote to PHA's Manager of Labor and Employee Relations that he and Defendant Mulgrew-Lambe "believe the behavior and the environment to be in serious violation of work rules and standards."

37. The same day, PHA Human Resources responded that "the alleged behavior in the workplace may be a violation of PHA's workplace rules and standards" and that "[t]his behavior will not be tolerated."

38. On May 2, 2024, Ms. Harrison told Defendant Mulgrew-Lambe about the conduct of Defendant Brown, Ms. Hashim, and Ms. Johnson.

**D. To get away from Defendant Brown, Ms. Harrison asked to move to the overnight shift, and PHA took her weekends.**

39. Because she no longer felt safe working alongside Defendant Brown, Ms. Harrison asked on May 2, 2024 to be moved to the 12:00 a.m. to 8:00 a.m. shift.

40. Ms. Harrison would not have asked to leave her shift but for Defendant Brown's harassment and PHA's failure to stop it.

41. PHA moved Ms. Harrison to the overnight shift the same day. In the same email confirming the move, Defendant Mulgrew-Lambe changed her regular days off from Sunday and Monday to Tuesday and Wednesday.

42. PHA did not move Defendant Brown or change his schedule.

43. Ms. Harrison asked PHA to restore her Sunday and Monday days off. PHA refused.

44. The overnight shift and the loss of her weekend days off disrupted Ms. Harrison's sleep, her family obligations, and her personal life.

45. The move did not separate Ms. Harrison from Defendant Brown. His shift ended at midnight, when hers began, so the two met at every shift change in the same room.

**E. PHA took ninety days to investigate, found nothing, and did nothing.**

46. On May 3, 2024, Ms. Harrison filed a formal written complaint with PHA Human Resources reporting Defendant Brown's sexual harassment and retaliation. She provided Defendant Brown's text messages and identified witnesses.

47. When PHA Human Resources interviewed Ms. Harrison about her complaint, it told her that PHA could not guarantee there would be no retaliation against her for making it. On May 20, 2024, Stacey Collins, PHA's Manager of Labor and Employee Relations, acknowledged the statement in writing to Ms. Harrison: "When HR stated we could not guarantee there would be no retaliation for you filing a complaint . . . ."

48. PHA's investigation took approximately ninety days.

49. On or about July 31, 2024, PHA told Ms. Harrison that it could not substantiate her complaint.

50. PHA did not discipline Defendant Brown, did not separate him from Ms. Harrison, and did not put any measure in place to protect her from retaliation.

**F. Defendant Brown retaliated against Ms. Harrison for the next year, and PHA let him.**

51. From 2024 into 2025, Defendant Brown repeatedly shut off the power to Ms. Harrison's workstation before her shift, turning off the monitors and the entire power strip, so that she had to wait for the system to reboot before she could take calls.

52. Defendant Brown also raised her desk to its full height before leaving, so that she had to reset it before she could begin work.

53. Defendant Brown's sabotage delayed the start of Ms. Harrison's work by five to fifteen minutes per shift.

54. Other coworkers told Defendant Brown to stop. He told them he would continue.

55. On three occasions, Defendant Brown walked so close to Ms. Harrison that she had to move out of his way to avoid being bumped: twice as she stepped off the elevator and once as she entered the radio room.

56. In September 2024, a coworker told others in front of Ms. Harrison's supervisor that Ms. Harrison was "homeless," "dirty," and lived in a shelter. The supervisor did nothing.

57. On April 7, 2025, Ms. Harrison reported to Defendant Mulgrew-Lambe in writing that Defendant Brown had been shutting down her workstation for months in retaliation for her sexual harassment complaint. That day, Defendant Brown had unplugged a monitor at her workstation so that neither she nor her coworkers could reconnect it, and she was forced to move to another station.

58. Defendant Mulgrew-Lambe did not discipline Defendant Brown. On April 10, 2025, he sent an email to all Dispatchers asking them not to turn off workstations or leave desks raised.

59. Shortly after midnight on April 14, 2025, Defendant Brown stayed in the radio room after his shift ended and sat at Ms. Harrison's workstation until 12:05 a.m., not logged in and not working. As he and Ms. Johnson left, Ms. Johnson said, "Let me turn my computer back on, I don't need no one telling on me, and I get in trouble," and the two walked out of the radio room laughing.

60. On April 14, 2025, Ms. Harrison asked Defendant Mulgrew-Lambe to let her start her shift at 12:10 a.m. instead of 12:00 a.m. so that she would not have to encounter Defendant Brown at shift change.

61. PHA granted the request only in a limited capacity. Defendant Brown's conduct continued.

62. On April 17, 2025, Ms. Harrison wrote to PHA Human Resources to "formally report incidents of sexual harassment and subsequent retaliation." She described Defendant Brown's sexual messages and comments, the sabotage of her workstation, his occupying her

desk after his shift, and the three times he crowded her, twice as she stepped off the elevator and once as she entered the radio room. She wrote: "This has gone on long enough and I need some type of resolution to this year long problem."

63. On April 21, 2025, Defendant Mulgrew-Lambe sent another email to all Dispatchers asking them to vacate their workstations promptly at the end of their shifts. He did not discipline Defendant Brown.

64. On April 30, 2025, Ms. Harrison arrived for her shift at 11:55 p.m. and found her workstation powered off again. She could not log in until 12:06 a.m. on May 1. Defendant Brown did not leave the building at the end of his shift. No supervisor or security was present. Ms. Harrison did not feel safe and left work at 12:30 a.m.

65. At 12:34 a.m. on May 1, 2025, Ms. Harrison wrote to Defendant Mulgrew-Lambe and PHA Human Resources, copying PHA's Chief of Police, that she feared for her safety and was "respectfully requesting supervision, security, literally anything so that this behavior can stop."

66. In May 2025, Ms. Harrison asked that a supervisor be present at shift changes. Defendant Mulgrew-Lambe told her he would try but could not guarantee that a supervisor would always be present.

67. PHA investigated Ms. Harrison's May 2025 reports but did not interview witnesses she identified to the sabotage and intimidation, including Casey Oakman and Fareeda Harper.

68. PHA did not consistently provide a supervisor at shift changes, did not provide security, and did not discipline Defendant Brown for any of this conduct.

69. PHA later terminated Defendant Brown's employment for reasons it says were unrelated to Ms. Harrison's complaints. After his termination, Defendant Brown returned to the workplace and told others, "I can come here whenever I want."

**G. PHA's failure to act has caused Ms. Harrison lasting harm.**

70. Ms. Harrison has come to fear encountering Defendant Brown at work. She changed her arrival time to avoid him and has had to sit in her car to compose herself before walking into work.

71. Ms. Harrison has missed approximately twenty-five to thirty days of work because of the stress and anxiety caused by Defendants' conduct.

72. Ms. Harrison is in ongoing psychotherapy for anxiety and depression. Her treating counselor has stated that her symptoms, including anxiety, emotional distress, and impaired concentration, periodically impair her ability to perform her job, and has recommended intermittent medical leave.

73. The above are just some of the examples of the sexual harassment and retaliation to which Defendants subjected Ms. Harrison.

74. Ms. Harrison claims a continuing practice of sexual harassment and retaliation and makes all claims herein under the continuing violation doctrine. Defendants' conduct continued into April and May 2025, within 300 days of the filing of her Charge.

75. As a result of Defendants' conduct, Ms. Harrison has suffered and continues to suffer emotional distress, anxiety, depression, humiliation, and loss of enjoyment of life, and has lost wages.

76. As a result of Defendants' conduct, Ms. Harrison's pre-existing emotional and psychological conditions, if any, were aggravated, activated, or exacerbated.

## CAUSES OF ACTION

## COUNT I
**TITLE VII SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**
**42 U.S.C. § 2000e-2(a)**
**Plaintiff Felicia Harrison v. Defendant Philadelphia Housing Authority**

77. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

78. Ms. Harrison is a woman and a member of a protected class.

79. Defendant Brown subjected Ms. Harrison to unwelcome sexual comments, sexual text messages, and sexual rumors because of her sex.

80. When Ms. Harrison rejected Defendant Brown's advances, he subjected her to a continuing campaign of hostility, sabotage, and physical intimidation.

81. The harassment was severe or pervasive. It recurred weekly, continued for more than a year, interfered with Ms. Harrison's ability to perform her job, and included physical intimidation.

82. The harassment detrimentally affected Ms. Harrison and would detrimentally affect a reasonable woman in her position.

83. PHA knew of the harassment no later than May 3, 2024, when Ms. Harrison filed her written complaint with Human Resources, and its Vice President of Public Safety and her supervisor, Defendant Mulgrew-Lambe, knew of the hostile environment by May 1, 2024.

84. PHA failed to take prompt and effective remedial action. It did not discipline Defendant Brown, did not separate him from Ms. Harrison, and responded to repeated written reports with group emails.

85. PHA is liable for the hostile work environment because it knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

86. As a result of PHA's violations of Title VII, Ms. Harrison has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff, Felicia Harrison, demands judgment against Defendant, Philadelphia Housing Authority, and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of back pay for wages lost; (3) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (4) an award of pre- and post-judgment interest and court costs as further allowed by law; (5) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of Title VII; and (6) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT II**
**TITLE VII RETALIATION**
**42 U.S.C. § 2000e-3(a)**
**Plaintiff Felicia Harrison v. Defendant Philadelphia Housing Authority**

87. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

88. Ms. Harrison engaged in protected activity when she opposed and reported Defendant Brown's sexual harassment, including on April 30, 2024, May 2, 2024, May 3, 2024, April 7, 2025, April 14, 2025, April 17, 2025, and May 1, 2025.

89. After Ms. Harrison engaged in protected activity, she was subjected to retaliatory harassment, including the repeated sabotage of her workstation, the occupation of her desk at the start of her shift, and physical intimidation by Defendant Brown.

90. The retaliatory harassment was materially adverse. It would dissuade a reasonable worker from making or supporting a charge of discrimination.

91. PHA knew of the retaliatory harassment through Ms. Harrison's repeated written reports to her supervisor and to Human Resources, and failed to take prompt and effective action to stop it.

92. PHA refused to restore Ms. Harrison's days off, did not consistently provide supervision at shift change, and left her to work alongside the man she had reported.

93. There is a causal connection between Ms. Harrison's protected activity and the retaliation she suffered. Defendant Brown's sabotage and intimidation began after she rejected and reported him and continued after each of her later reports.

94. As a result of PHA's violations of Title VII, Ms. Harrison has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff, Felicia Harrison, demands judgment against Defendant, Philadelphia Housing Authority, and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of back pay for wages lost; (3) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (4) an award of pre- and post-judgment interest and court costs as further allowed by law; (5) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of Title VII; and (6) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT III
## PHRA SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

**43 P.S. § 955(a)**
**Plaintiff Felicia Harrison v. Defendant Philadelphia Housing Authority**

95. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

96. PHA discriminated against Ms. Harrison because of her sex by subjecting her to, and failing to remedy, a hostile work environment, as set forth above.

97. As a result of PHA's violations of the PHRA, Ms. Harrison has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff, Felicia Harrison, demands judgment against Defendant, Philadelphia Housing Authority, and prays for the following relief: (1) an award of compensatory damages in accordance with the PHRA; (2) an award of back pay for wages lost; (3) an award of reasonable attorneys' fees and costs of this action in accordance with 43 P.S. § 962(c.2); (4) an award of pre- and post-judgment interest and court costs as further allowed by law; (5) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the PHRA; and (6) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT IV**
**PHRA RETALIATION**
**43 P.S. § 955(d)**
**Plaintiff Felicia Harrison v. Defendant Philadelphia Housing Authority**

98. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

99. PHA retaliated against Ms. Harrison because she opposed and reported sexual harassment, as set forth above.

100. As a result of PHA's violations of the PHRA, Ms. Harrison has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff, Felicia Harrison, demands judgment against Defendant, Philadelphia Housing Authority, and prays for the following relief: (1) an award of compensatory damages in accordance with the PHRA; (2) an award of back pay for wages lost; (3) an award of reasonable attorneys' fees and costs of this action in accordance with 43 P.S. § 962(c.2); (4) an award of pre- and post-judgment interest and court costs as further allowed by law; (5) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the PHRA; and (6) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT V
## PHRA AIDING AND ABETTING
## 43 P.S. § 955(e)
## Plaintiff Felicia Harrison v. Defendants Kyle Mulgrew-Lambe and George Brown, Jr.

101. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

102. The PHRA makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any act declared to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the PHRA.

103. Defendant Mulgrew-Lambe, as Ms. Harrison's direct supervisor, knew of Defendant Brown's sexual harassment and retaliation from Ms. Harrison's repeated written

reports and from his own conversations with PHA's Vice President of Public Safety, and failed to take action to stop it, thereby aiding and abetting PHA's unlawful discriminatory and retaliatory practices.

104. Defendant Brown aided, abetted, incited, compelled, and coerced PHA's unlawful discriminatory and retaliatory practices by sexually harassing Ms. Harrison and by retaliating against her for reporting him.

105. As a result of Defendants Mulgrew-Lambe's and Brown's violations of the PHRA, Ms. Harrison has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff, Felicia Harrison, demands judgment against Defendants, Kyle Mulgrew-Lambe and George Brown, Jr., and prays for the following relief: (1) an award of compensatory damages in accordance with the PHRA; (2) an award of reasonable attorneys' fees and costs of this action in accordance with 43 P.S. § 962(c.2); (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the PHRA; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT VI
## PFPO SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT
## Phila. Code § 9-1103(1)(a)
## Plaintiff Felicia Harrison v. Defendant Philadelphia Housing Authority

106. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

107. PHA discriminated against Ms. Harrison because of her sex by subjecting her to, and failing to remedy, a hostile work environment, as set forth above.

108. As a result of PHA's violations of the PFPO, Ms. Harrison has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff, Felicia Harrison, demands judgment against Defendant, Philadelphia Housing Authority, and prays for the following relief: (1) an award of compensatory damages in accordance with the PFPO; (2) an award of back pay for wages lost; (3) an award of reasonable attorneys' fees and costs of this action as permitted by the PFPO; (4) an award of pre- and post-judgment interest and court costs as further allowed by law; (5) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the PFPO; and (6) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT VII
## PFPO RETALIATION
## Phila. Code § 9-1103(1)(g)
## Plaintiff Felicia Harrison v. Defendant Philadelphia Housing Authority

109. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

110. PHA retaliated against Ms. Harrison because she opposed and reported sexual harassment, as set forth above.

111. As a result of PHA's violations of the PFPO, Ms. Harrison has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff, Felicia Harrison, demands judgment against Defendant, Philadelphia Housing Authority, and prays for the following relief: (1) an award of compensatory damages in accordance with the PFPO; (2) an award of back pay for wages lost; (3) an award of reasonable attorneys' fees and costs of this action as permitted by the PFPO; (4) an award of pre- and post-judgment interest and court costs as further allowed by law; (5) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the PFPO; and (6) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT VIII**
**PFPO AIDING AND ABETTING**
**Phila. Code § 9-1103(1)(h)**
**Plaintiff Felicia Harrison v. Defendants Kyle Mulgrew-Lambe and George Brown, Jr.**

112. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

113. The PFPO makes it unlawful for any person to aid, abet, incite, compel, or coerce the doing of any unlawful employment practice.

114. Defendants Mulgrew-Lambe and Brown aided, abetted, incited, compelled, and coerced PHA's unlawful discriminatory and retaliatory practices, as set forth above.

115. As a result of Defendants Mulgrew-Lambe's and Brown's violations of the PFPO, Ms. Harrison has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff, Felicia Harrison, demands judgment against Defendants, Kyle Mulgrew-Lambe and George Brown, Jr., and prays for the following relief: (1) an award of compensatory damages in accordance with the PFPO; (2) an award of reasonable attorneys' fees

and costs of this action as permitted by the PFPO; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the PFPO; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised by this complaint.

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC

*/s/ Ian M. Bryson, Esq.*
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
450 7th Avenue, 30th Floor
New York, NY 10123
Direct: (267) 857-0849
ian@dereksmithlaw.com

Dated: October 16, 2026

Attorneys for Plaintiff, Felicia Harrison